**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN**

STEVEN DAVIES on behalf of himself and all others similarly situated,

Plaintiff,

v.

WHIRLPOOL CORPORATION,

Defendant.

**JURY TRIAL DEMANDED**

**CLASS ACTION**

# CLASS ACTION COMPLAINT

Plaintiff Steven Davies, individually and on behalf of all others similarly situated (the "Class"), through his undersigned counsel, alleges the following upon information and belief and investigation of counsel, except for those allegations pertaining to Plaintiff, which are based on personal knowledge, against Defendant Whirlpool Corporation ("Whirlpool").

## INTRODUCTION

1. Plaintiff and the Class are purchasers of Whirlpool ranges, including those sold under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names (the "Ranges"), that include dangerous latent defects in the design, or in the manufacture, of their front-mounted burner control knobs that make the Ranges susceptible to unintentional actuation (the "Defect"). The control knobs on the Ranges are prone to, and do, rotate to the "on" position as a result

of minor, inadvertent contact. When the knobs on the Ranges are accidentally and inadvertently contacted, the Ranges actuate without warning and cause the ignition of gas Range burners and heating of electric Range cooktops unbeknownst to the consumer. This unintentional actuation of the Ranges thus creates hazardous conditions—leaking gas or heating electric cooktops to extreme temperatures—and serious risk of fire, property damage, and personal injury.

2. The Ranges span several model numbers, but they all contain the same defect and are all subject to unintentional actuation. All of the Ranges, gas and electric, contain the same, or substantially similar, front-mounted burner control knobs which are identically or similarly designed and, as a result, are prone to, and do, rotate as a result of minor, inadvertent contact causing them to unintentionally actuate.

3. The defective condition of the Ranges is the result of the low detent (catch that prevents motion until released) force and tiny distance the burner control knobs need to travel to be turned to the "on" position, which is inadequate to prevent unintentional actuation. In other words, the ease with which the knobs can be pushed in and rotated without resistance fails to prevent the Ranges from being actuated inadvertently.

4. Further, the control knobs are placed on the Ranges without the necessary guards to prevent such unintentional actuation.

5. The propensity of the Ranges to be unintentionally actuated—*i.e.*, turned

on by accident—creates a significant and largely unappreciated safety risk for Plaintiff and the Class. This defective condition renders the Ranges hazardous and unsafe for normal and expected use. The Defect substantially impedes the central function of the Ranges, which serve one purpose: safe cooking.

6. Since at least 2011, Whirlpool has known that its Ranges were susceptible to unintentional actuation. Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC"). Consumers have also filed complaints with Whirlpool directly via online product reviews on websites owned and operated by Whirlpool and indirectly via websites owned and operated by third-parties.

7. Because Whirlpool concealed the existence of the Defect, Plaintiff and the Class were deceived and deprived of the benefit of their bargain. A range that turns on without a consumer's knowledge has no value because it cannot be used safely. Alternatively, the Ranges have far less value than promised at the point of sale, because a range prone to unintentional actuation, and the attendant risk of harm, is less valuable than one that operates safely. Had they known of the Defect, Plaintiff and the Class would not have purchased the Ranges or would have paid far less.

8. The following allegations are based upon personal knowledge as to Plaintiff's conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

10. The United States District Court for the Western District of Michigan has jurisdiction over Defendant because Defendant resides and transacts business in Michigan, has purposely availed itself of the laws of Michigan, and because many of the specific events giving rise to this action occurred in Michigan.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant has marketed, advertised, and sold the Ranges, and otherwise conducted extensive business, within this District. In addition, Defendant's principal place of business is in Benton Harbor, Michigan.

**PARTIES**

12. Plaintiff Steven Davies is a citizen and resident of Millsboro, Delaware.

13. Whirlpool is a Delaware corporation headquartered in Benton Harbor, Michigan.

14. Whirlpool markets and distributes major home appliances and small domestic appliances primarily under the Whirlpool, Maytag, KitchenAid, JennAir, Amana, Roper, Admiral, Affresh, and Gladiator brand names.

15. Whirlpool is and has at all relevant times been in the business of distributing, marketing, promoting, and selling the Ranges throughout the United States and in this jurisdiction. Whirlpool resides in and engages in a continuous course of business in this District and sells thousands of Ranges and other consumer goods in this District every year.

16. Whirlpool is in the business of manufacturing, producing, distributing, and selling consumer appliances, including Ranges, to customers throughout the United States, both directly and through its network of authorized dealers.

## ALLEGATIONS SPECIFIC TO PLAINTIFF

### A. Plaintiff Davies

17. On or about October 30, 2023, Mr. Davies purchased a new Whirlpool Range Model Number WEG750H0HV from Shore Appliances—an authorized Whirlpool reseller—in Lewes, Delaware for approximately $2,249.00.

18. Mr. Davies reviewed Whirlpool marketing materials before he purchased his Range.

19. Mr. Davies was aware that his Range was covered by a Whirlpool warranty. The warranty was included in the user manual that came with his Range. The

warranty provides that Whirlpool warrants against defects in materials and workmanship for one year. Absent this warranty, Mr. Davies would not have purchased his Range.

20. Mr. Davies purchased the Range for personal, family, or household use.

21. Mr. Davies uses, and at all times has used, his Range in a normal and expected manner.

22. Mr. Davies' Range was delivered to his home in or around November 2023. Shortly thereafter, Mr. Davies leaned over the Range, turned the knobs on inadvertently by bumping them, and his shirt caught on fire.

23. Mr. Davies realized that the Range became inadvertently actuated because its burner control knobs turned to the "on" position with the slightest touch, bump, or brush. Though he is now more cautious around the Range, it continues to turn on inadvertently at regular intervals.

24. Whirlpool knew of the Defect with Mr. Davies' Range, both generally and for the exact Model purchased by Mr. Davies, as evidenced by Whirlpool receiving a complaint from the CPSC regarding this model before Mr. Davies purchased his Range. *See* below at ¶¶ 49-50.

25. Before purchasing his Range, Mr. Davies did not and could not have known that his Range suffered from the Defect. Had Whirlpool disclosed the Defect prior to his purchase of the Range on the product's packaging, in promotional and

marketing materials, in the accompanying print materials, or through some other means, Mr. Davies would not have purchased the Range or would have paid substantially less. As a direct result of Whirlpool's conduct, Mr. Davies has suffered significant economic injury.

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A. The Ranges

26. The Ranges all have front-mounted knobs that control their burners, for example:


[1]

[1] https://www.whirlpool.com/kitchen/cooking/ranges/slide-in/p.5.8-cu.-ft.-smart-slide-in-gas-range-with-ez-2-lift-hinged-cast-iron-grates.weg750h0hv.html (last accessed Oct. 26, 2026).

27. The models at-issue include the Plaintiff's model and all other models (discontinued or still available for sale) containing front-mounted burner controls.

28. The National Home Builders Association states that the useful life of a gas range is 15 to 23 years, with 19 years being the average.[2] The National Home Builders Association also states that the useful life of an electric range is 13 to 20 years, with 16 years being the average.[3]

**B. The Defect**

29. Consumers reasonably expect that Ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with a Range's burner controls—while cooking or performing other activities in its proximity, or by pets or children—will actuate the Range. However, because of the Defect, inadvertent contact with the burner controls may, and has, resulted in unintended actuation of Ranges. Indeed, inadvertent contact with burner controls by pets and children has caused Ranges to actuate and create fires and emit deadly gases.

30. Unfortunately, and unbeknownst to consumers, because of the Defect, each knob actuates the Ranges through a single smooth motion—a push motion with a twist—requiring minimal force and distance. Plaintiff alleges that this is a defect in

---

[2] https://www.mrappliance.com/expert-tips/appliance-life-guide/ (last accessed Oct. 26, 2026).

[3] *Id.*

the design, or alternatively, a manufacturing defect wherein the Ranges differ uniformly from the manufacturer's intended result or design. The Ranges do not conform to industry standards, or to a reasonable consumer's expectation, because the knobs are susceptible to unintentional actuation rendering the Ranges dangerously defective.

31. The process to actuate a Range should and is intended to be the result of two separate and distinct purposeful actions: a first action (pushing the control knob in), followed by a second action (rotating the knob to the desired heating level).

32. The user manual for the Range purchased by Plaintiff describes the process as such:

> **Check Operation of Cooktop Burners**
>
> **Standard Surface Burners**
>
> Push in and turn each control knob to the "ignite" position.
>
> The flame should light within 4 seconds. The first time a burner is lit, it may take longer than 4 seconds to light because of air in the gas line. [4]

33. However, because of the low detent force and minuscule distance the control knobs need to travel to allow users to actuate their Ranges, the Ranges are often inadvertently actuated by a single continuous motion.

---

[4] https://www.whirlpool.com/content/dam/global/documents/202102/owners-manual-w11498994-reva.pdf (last accessed Oct. 26, 2026).

34. All of the Ranges are also uniformly defective because they all fail to appropriately guard against unintentional actuation. The design of the Ranges puts no space between the consumer and the hazard. There are no guards that reduce the risk of unintentional actuation during cleaning or other inadvertent contact made by a user, bystander, child, or pet.

35. While some of the Ranges may contain an oven handle that could have a guarding effect, it is wholly insufficient to act as an effective guard or barrier. As an initial matter, the outermost burner control knobs in each of the Ranges protrude further than the oven handles themselves—therefore eliminating any guarding property they may have. Moreover, any such guarding effect is further blunted by the oven handles' rounded (rather than squared) design, which permits inadvertent contact.

36. The Defect renders Whirlpool Ranges unusable for their intended central purpose: safe cooking. Unintentional actuation allows electric cooktops to reach extreme temperatures and gas Ranges to emit toxic fumes; both electric and gas Ranges present a fire risk.

37. The toxic fumes emitted from gas Ranges are hazardous to human health. Recent studies have shown that gas stove emissions significantly elevate cancer risks

in homes with medium to high gas stove usage and inadequate ventilation, due to the significant benzene exposure caused by gas stoves.[5]

38. Moreover, children exposed to gas stove emissions have a much higher chance of developing pediatric asthma from long term nitrogen dioxide exposure.[6]

39. Gas stoves which are unintentionally actuated release even more toxic fumes into a home, as they are often on for hours or days before someone realizes the stove is on.

40. The health risks of exposure to gas stove emissions are so great that Colorado has recently passed a law requiring each newly sold gas stove without a yellow warning label which directs consumers to a website detailing the health risks of toxic fumes emitted by gas stoves.[7]

41. The Ranges are defective at the point of sale. Consumers could not reasonably know about the Defect at the point of sale and could not discover the Defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ranges, the

---

[5] https://www.psehealthyenergy.org/work/exposure-and-health-risks-of-benzene-from-combustion-by-gas-stoves-in-u-s-homes/ (last accessed Oct. 26, 2026).

[6] https://www.science.org/doi/10.1126/sciadv.adm8680 (last accessed Oct. 26, 2026).

[7] https://content.leg.colorado.gov/sites/default/files/2025a_1161_signed.pdf (last accessed Oct. 26, 2026).

design of the Ranges, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

**C. Whirlpool's Knowledge of the Defect**

42. At all relevant times, Whirlpool knew that the Ranges it marketed and sold were prone to unintentional actuation, and, therefore, that the Ranges were inherently defective, unmerchantable, and unfit for their intended use.

43. The Defect is universal in all Range Models which have front-mounted burner knobs. As soon as Whirlpool knew of the Defect for one Range Model, it knew of the Defect for all Range Models.

44. Consumers made numerous complaints about the Defect, to the U.S. Consumer Product Safety Commission ("CPSC"), websites operated by Whirlpool, and websites operated by third-party retailers.

45. A sampling of those complaints are included below to demonstrate that Whirlpool knew of the Defect by at least 2011. *See also* Exhibit A.

46. The CPSC forwards consumer complaints of safety hazards directly to the manufacturer of a product after it receives and reviews a complaint.[8] It is required to do this by federal law. Moreover, the CPSC publicly posts these complaints on its

---

[8] FAQs, Saferproducts.gov, https://www.saferproducts.gov/FAQs/FrequentlyAskedQuestions2#item2-1 (last accessed Oct 26, 2026).

website, saferproducts.gov, and lists the date on which the complaint was sent to the manufacturer.

47. On August 20, 2011, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. AGR5844VDW, and Whirlpool responded to the complaint directly.[9]

**Incident Details**

**Incident Description:** I recently bought an Amana gas range, Model AGR5844VDW. I've used it approximately 4 times. The knobs on the front of the range are extremely easy to turn on inadvertently. They protrude rather far from the surface of the stove, they are pointed so they can catch on things, and you only need to push it in very slightly to turn the knob. Out of the 4 times I've used the range, I've unknowingly turned the gas on 3 times while either removing things from the stove or cleaning the stovetop. I didn't realize the gas was turned on until we smelled gas in the house. Once it happened twice in one evening! The last time it happened, we didn't realize it, and we woke up in the morning to our home filled with gas. It had been running all night. We also have a greyhound, who is the height of the stove knobs, so he could easily have bumped it with his nose and turned it on. A small child could very easily reach up and slightly turn the knob to get the gas going. We do not know how it got turned on the last time, but it could easily have blown up the house, it was that bad. We were afraid to turn on any fans because we didn't want to create a spark and cause an explosion. We had to open the doors and windows and evacuate until it cleared up a little. The store we bought the appliance from (Frank's Appliance in Bradley, IL) said they had a similar complaint from another customer. They called Amana and were told they made it that way because they got complaints from people with arthritis that it was too hard to turn the knobs, so they were standing by their product and would not do anything about it. (I guess they think it's OK to take the risk of blowing up someone's house, though!) While I was in the appliance store, I went with the owner to the floor model of the range, showed her how I had leaned slightly against the stove to clean the stovetop, and each time I did it in the store (4 to 5 times), it turned the burner on. I tried it on all the other brands of ranges in the store, and this was the only model where I could turn the gas on just by leaning against the stove. This is the MOST DANGEROUS thing I have ever had in my house, and it could very easily have killed the entire family, and Amana thinks it is not a problem. Frank's Appliance agreed that it was a dangerous product and agreed to swap it out with a range made by another manufacturer. I am not normally a complainer, but this stove is going to kill someone, and I would feel terrible if I neglected to report the problems I know are inherent to the product. [REDACTED]

**Incident Date:** 8/13/2011

**Incident Location:** Unspecified

[9] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1197907

**Comments from the Manufacturer/Private Labeler**

The Consumer Product Safety Commission has forwarded your report of an incident in which you identified a product from our Whirlpool Corporation brands. We value the well-being of our customers, and we strive to make all our products as safe as possible. If you have not already contacted us about this issue, please e-mail the Product Safety Team of our Customer eXprience Center at Safety_customerexperience@whirlpool.com. To ensure that we have sufficient information to evaluate this incident, please include the last four digits of your CPSC Report No. in the subject line of your e-mail. In the body of the e-mail, please include a day time phone number where we can contact you along with a brief description of the report you filed with the CPSC. If a Whirlpool-manufactured or Whirlpool-marketed product or component is involved, please preserve it for possible inspection and testing if necessary.

48. On January 24, 2017, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. KSGB900ESS:[10]

**Incident Details**

**Incident Description:** Four times my wife accidentally turned on a burner on our stove top by leaning against one of the knobs while she cooked or reached up to the microwave. Three times we smelled the gas leaking much later. One time the burner lit. There is no way to lock the knobs, so we have to keep the knobs removed from the stove.

**Incident Date:** 11/3/2016

**Incident Location:** Home/Apartment/Condominium

49. On May 8, 2019, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WEG750H0HV—the same Range Model owned by Plaintiff Davies. [11]

---

[10] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1621781

[11] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1869957

**Incident Details**

**Incident Description:** The knobs on this stove are located on the front of this unit. If you reach up to get to a microwave located above the stove or a cabinet to the side of the stove It is very easy to engage the knob enough for it to turn on the gas. It doesn't make the clicking noise to warn you that you have turned on the burner. Gas leaks and you have no idea you turned the burner on. This has happened over 4 times to different people in my household. The last time it happened was at night before going to bed and the gas was leaking for over an hour. I awoke to the smell and had to get everyone out in an emergency. When I called Whirlpool they said it was a ADA stove. This stove is being sold to the public through LOWES. When I bought my stove Lowes did not tell me this or advertise it to be for ADA. I went to Lowes to let them know what happened and they said to call whirlpool. will It will take killing someone to get this fixed? They could change the knob design or put an option to lock the knobs out like they do for the oven display on the top of the stove.

**Incident Date:** 4/26/2019

**Incident Location:** Home/Apartment/Condominium

50. On June 30, 2021, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WEG750H0HV—the same Range Model owned by Plaintiff Davies.[12]

**Incident Details**

**Incident Description:** Whirlpool Range WEG750H0HV. This range has a design flaw with the burner knobs that when lightly bumped or brushed against will open the gas. We have had this range for approx. 18 months and have had this happen at least half a dozen times. This last time yesterday I simply took a towel off the handle bar but was unaware that it brushed a knob. It filled our entire first floor with gas before we entered the room again later. This is a serious issue especially if there are young children around. The igniter does not sound when this happens so there's no way of knowing until you smell the rotten egg smell.

**Incident Date:** 6/26/2021

**Incident Location:** Home/Apartment/Condominium

51. On March 10, 2017, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WGG745S0FS:[13]

---

[12] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3368019

[13] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1635477

**Incident Details**

**Incident Description:** We purchased a new Whirlpool Double Oven Range two weeks ago. Within the first few days we found numerous occasions where the knob on the stove was partially turned to the left letting gas escape into the Kitchen. One one evening the smell was very strong when we walked into the kitchen. After several moments we realized that it was coming from the stove. We had to turn on the ceiling fan to help dissipate the fumes. We know that, on some occasions, one of us apparently brushed up against the knob causing it to turn on. We do not know what happened the evening the entire kitchen filled with fumes. This is obviously a defect in the product as we have had a stove in this same position for the past 35 years without a single incident.

**Incident Date:** 2/3/2017

**Incident Location:** Home/Apartment/Condominium

52. On September 8, 2017, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. KSDG950ESS:[14]

**Incident Details**

**Incident Description:** Kitchen Aid downdraft range Model KSDG950ESS, serial number R62616279: The least amount of pressure on the control knobs of this range result in gas being released or the burner igniting. I have made Kitchen Aid aware of this issue. There has been no resolution of the problem. To increase our safety, I have installed child safety knob covers on each of the range knobs. I do not consider this a long term resolution to this safety issue.

**Incident Date:** 9/30/2016

**Incident Location:** Home/Apartment/Condominium

53. On January 1, 2018, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WGG745S0FS02:[15]

**Incident Details**

**Incident Description:** We own a Whirlpool gas range and have noticed on numerous occasions the just lightly bumping the top burner knobs causes them to turn on with out starting the igniters. We could smell gas while standing there. I checked out the knobs and discovered that the positive lock mechanism is extremely weak allowing the knobs to be bumped to a position that allows gas to flow but no ignition. The last time this occurred was this morning at 0755 (Local). I know there have been numerous explosions around the country from unexplained gas leaks. If I was not disabled and home the majority of the time then we could have been a victim of the same issue. This is the second Whirlpool gas range with this issue!

**Incident Date:** 1/1/2018

**Incident Location:** Home/Apartment/Condominium

54. On April 21, 2018, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WGG745S0FS02:[16]

---

[14] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1690317

[15] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1722868

[16] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1759095

**Incident Details**

**Incident Description:** We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 4/21/2018

**Incident Location:** Home/Apartment/Condominium

55. On April 10, 2019, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WGG745S0FS02:[17]

**Incident Details**

**Incident Description:** Gas range stovetop burner knobs. Just bumping against knob with your body, just reaching for the over the microwave will turn on a burner not every time but it has numerous times. There is a stop in the knob in the off position but it takes very little pressure to turn it on.

**Incident Date:** 4/10/2019

**Incident Location:** Home/Apartment/Condominium

56. On November 2, 2019, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. WGG745S0FS02:[18]

**Incident Details**

**Incident Description:** I am reporting this oven for a 2nd time as nothing has been resolved & the knobs are now extremely easy to turn with a slight bump. I am now wondering how many of the houses you see in the news that blow up spontaneously may be caused by unsafe knobs that are turned on without a click to alert the homeowner gas is leaking. The manufacture has no solutions-no knob covers will work on this style of knob. We are forced to constantly check to make sure the gas is not accidentally turned on...and hope our house doesn't explode. I've copied the previous report in the hope this gets recalled to avoid a future accident. Report #20180507-C40DE-2147388144 5/7/18: We purchased a Whirlpool double oven Model #WGG745S0FS02 in October. We have a major concern. If the control knobs are slightly bumped they turn on! It DOES NOT click or give any notice that it has been turned on....so gas fills the house, until you smell it!! I have contacted Whirlpool & they suggested to schedule a service call. I went on the website to look at reviews & others have noted this problem. The last time this happened we had 40 guests in our basement & it wasn't until someone went upstairs that we realized 2 burners had been bumped on. This has happened 4 times. This is a huge safety issue and is totally being ignored. Thanks in advance for your help.

**Incident Date:** 11/2/2019

**Incident Location:** Home/Apartment/Condominium

---

[17] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1864762

[18] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1917545

57. On February 25, 2020, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. KFDD500ESS:[19]

**Incident Details**

**Incident Description:** The burner knobs on my Kitchenaid range turn on too easily Creating a big safety concern leaking gas into the house. The knobs turn with a simple bump. My model number is KFDD500ESS Please look into this ASAP as this could cause injury death or fire

**Incident Date:** 1/29/2020

**Incident Location:** Home/Apartment/Condominium

58. On October 30, 2020, the CPSC sent an incident report to Whirlpool regarding the Defect in a Range Model No. KSGG700ESS2.[20]

**Incident Details**

**Incident Description:** I'd like to report a safety issue with the Kitchenaid Gas Range (model number: KSGG700ESS2). I've had the range in my home for around 2 weeks and have have 2 instances where a burner knob has been found on- even if the range hasn't been used that day. I believe the knob is too sensitive to the touch and any brush as you walk by can turn the gas on without igniting the pilot light. This results in gas filling the kitchen until we smell it and can open windows/doors. This is concerning in the case where we leave home and don't realize the knob was knocked. Each time, I have been the one to notice the issue, but no one is using the range at the time it's found (for several hours at least). No injuries have occurred yet, but it could be a matter of time before the gas causes an explosion in the house.

**Incident Date:** 10/1/2020

**Incident Location:** Home/Apartment/Condominium

59. Attached at Exhibit A are additional complaints transmitted to Whirlpool by the CPSC regarding the Defect.

60. Whirlpool also received notice of consumer complaints regarding the Defect through affiliated websites that it owns and operates, such as whirlpool.com, maytag.com, and kitchenaid.com, among others.

---

[19] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1943956

[20] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2021057

61. And companies like Whirlpool regularly monitor reviews or complaints about their products on third-party websites, such as amazon.com, lowes.com, homedepot.com, and bestbuy.com, among others.

62. In or around 2017, Whirlpool received a complaint regarding the Defect in a Range Model No. WFG320M0BW:[21]

> **Great cook top design**
>
> 8 years ago
>
> The functions on the cook top are excellent. I'm not fond of the knobs, as they are too easy for a child to turn. Also, if you decide you want to use the broil feature, be forewarned, no broil pan comes standard with this range....they make you buy it separately. :(
>
> Yes, I recommend this product.

63. In or around 2018, Whirlpool, through KitchenAid, received a complaint regarding the Defect in a Range Model No. KSGG700EBS:[22]

> dexter89 · 4 years ago
>
> **Dangerous!**
>
> Knobs can be easily turned without noticing, leaking gas into the area without ignition. Additionally, I'm unable to find a 3rd party manufacturer with knob covers that are compatible with this model due the the bezel around each knob.

---

[21] https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.whirlpool-5.1-cu.-ft.-freestanding-4-burner-gas-stove.wfg320m0bw.html?

[22] https://www.kitchenaid.com/major-appliances/black-stainless/ranges/p.30-inch-5-burner-gas-slide-in-convection-range.ksgg700ebs.html#pdp-accordion-reviews

64. In or around 2018, Whirlpool, through KitchenAid, received a complaint regarding the Defect in a Range Model No. KSDB900ESS:[23]

gail0671 · 4 years ago

**Very dangerous appliance!**

We have owned this stove for over 3 years and thought we could overcome its major shortcoming--knobs so easily turned that a slight brush against them turns on the gas well before the ignition click. It was when our explosive gas alarm sounded that we knew we could no longer cope with the problem. If we had not been at home, our house would have exploded. I was told by KitchenAid that the stove was designed specifically for handicapped use. Why wasn't I told this at purchase? I was also told that mine was a "use and care" problem, not one of design. The finish is so delicate that it scratches with a fingernail. Such a disappointment.

65. In or around 2022, Whirlpool received a complaint regarding the Defect in a Range Model No. WFG320M0BW:[24]

---

[23] https://www.kitchenaid.com/major-appliances/ranges/dual-fuel-ranges/p.30-inch-5-burner-dual-fuel-convection-slide-in-range-with-baking-drawer.ksdb900ess.html#pdp-accordion-reviews

[24] https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.whirlpool-5.1-cu.-ft.-freestanding-4-burner-gas-stove.wfg320m0bw.html

Father of 3 Toddlers · 2 years ago

**OK Range, If You Don't Have Young Kids**

Operationally, the range works as intended. The main issue is the temperature on the outsides including the door increase to 170+ Degrees. This is well above burn temperatures for toddlers and is very hot to the touch. The flaw is in the design. This model only has 2 panes of glass blocking the heat source from the door. That helps keep the cost down but will burn your kids if they touch the outside of the door or look in the glass to see the cookies baking.

DO NOT RECOMMEND FOR FAMILIES WITH YOUNG CHILDREN.

Another issue is the front knobs are very easy for kids to turn on accidentally. I have to remove the knobs while im not in the kitchen to prevent them from playing with it.

**I received a sweepstakes entry for this review.** Yes

66. In or around 2020, Whirlpool received a complaint regarding the Defect in a Range Model No. WFG525S0JB:[25]

Jrb8 · 2 years ago

**Knobs pose a danger**

The stove works fine, but there is an issue with the knobs on the front. When leaning over the stove, for example to clean the microwave above, or to put things away in the cupboard, your body putting pressure on the knobs can (and has) easily turn the gas on without realizing it. Once it even went so far as to turn the flame on, and I was leaning over it. I had an older Whirlpool gas range in the same spot before and I never had this issue.

**I received a sweepstakes entry for this review.** Yes

67. In or around 2020, Whirlpool received a complaint regarding the Defect

[25] https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.5.0-cu.-ft.-whirlpool-gas-range-with-center-oval-burner.wfg525s0jb.html

in Range Model No. WEG750H0HV:[26]

Lin560 · 2 years ago

**Do not purchase**

Although I love Whirlpool, this range is flawed. The oven comes one when cleaning. The gas knobs are sensitive and turn on when not expected releasing gas. Dangerous. And now, after just having for less than 5 months, it is not working and I have to have a service call. Very disappointed.

**I received a sweepstakes entry for this review.** Yes

68. In or around 2020, Whirlpool received a complaint regarding the Defect in a Range Model No. WFG515S0JW:[27]

Ms. Kat · 2 years ago

**Disappointed.**

This is a gas range and the knobs "do not" have a secure shut "off" position. You do not have to push the knob in to turn the range on or even a click to listen for to turn the range on. I sure am glad I don't have children because they could turn the gas on and you would not know it until you smelled gas. I turned it on while cleaning it and did not realize what I had done until I smelled gas.

**I received a sweepstakes entry for this review.** Yes

69. In or around 2022, Whirlpool received a complaint regarding the Defect

[26] https://www.whirlpool.com/kitchen/cooking/ranges/slide-in/p.5.8-cu.-ft.-smart-slide-in-gas-range-with-ez-2-lift-hinged-cast-iron-grates.weg750h0hv.html

[27] https://www.whirlpool.com/kitchen/cooking/ranges/single-oven-freestanding/p.5.0-cu.-ft.-whirlpool-gas-range-with-speedheat-burner.wfg515s0jw.html

in a Range Model No. MGT8800FZ:[28]

> EPMiller · 4 years ago
>
> **DANGEROUS GAS CONTROL DESIGN**
>
> I have an older model of this series and on mine it is possible to have gas flowing on the cooktop BEFORE the igniter comes on. Found this out when someone accidentally must have bumped the knob and we noticed a strong gas odor in the room. Hopefully they have re-engineered the gas controls.

70. In or around 2022, Whirlpool received a complaint regarding the Defect in a Range Model No. MGR8800FZ:[29]

> Don1052 · 6 months ago
>
> **MOST DANGEROUS STOVE I HAVE OWNED**
>
> You can accidently brush against the front of the stove and the knobs turn, allowing gas to flow without igniting! This has happened a number of times. This is the first time I have ever had a stove with this problem. I'm afraid one day I won't catch it until the darn thing blows up the house.
>
> **I received a sweepstakes entry for this review.** Yes

71. In or around 2021, Whirlpool, through KitchenAid, received a complaint regarding the Defect in a Range Model No. KSEG950ESS:[30]

---

[28] https://www.maytag.com/kitchen/ranges/double-oven-freestanding/p.30-inch-wide-double-oven-gas-range-with-true-convection-6.0-cu.-ft.mgt8800fz.html

[29] https://www.maytag.com/kitchen/ranges/single-oven-freestanding/p.30-inch-wide-gas-range-with-true-convection-and-power-preheat-5.8-cu.-ft.mgr8800fz.html

[30] https://www.kitchenaid.com/major-appliances/ranges/slide-in-ranges/p.30-inch-4-element-electric-downdraft-slide-in-range.kseg950ess.html

Pam in VT · 3 years ago

**Dangerous appliance. Do not buy!**

The knobs on this appliance turns easily and have about a 1" play before the starter kicks in. I have found them inadvertently turned on with gas filling the house several times. KitchenAid is aware and says it is due to care and use and recommends i get knob covers. It is a flawed design. Also the cat walks on the panel and turns things on and off. Downdrafts doesn't work well either. I have had several KitchenAid appliances over the years and am disappointed they will not help me.

72. In or around 2021, Whirlpool, through KitchenAid, received a complaint regarding the Defect in a Range Model No. KFGD500EBS:[31]

Anna57 · a year ago

**Dangerous**

The front knobs stick out too far and are very easy to turn by just brushing against them causing a gas smell. It's dangerous, especially if there's kids around. And to clean the top you have to take the 2 huge grates off. Plus the lower oven stopped working after one use and I had to have the igniter replaced.

**I received a sweepstakes entry for this review.** Yes

73. Attached at Exhibit A are additional complaints transmitted to Whirlpool by the CPSC regarding the Defect. The incident reports and complaints detailed above and in the attached are samples and not exhaustive. Additional reports and complaints regarding the Defect in Ranges can be found on saferproducts.gov, Whirlpool's websites, and the websites of Whirlpool retailers.

74. In addition, as noted above and in the attached complaints, certified

---

[31] https://www.kitchenaid.com/major-appliances/ranges/gas-ranges/gas-double-oven-range/p.30-inch-5-burner-gas-double-oven-convection-range.kfgd500ebs.html?

Whirlpool appliance technicians have observed unintentional actuation in Ranges in the field.

### D. Whirlpool Had a Duty to Disclose the Latent Safety Defect, but Affirmatively Concealed it

75. Whirlpool had a duty to disclose the safety Defect because it had superior and exclusive knowledge of it. Whirlpool also had a duty to disclose the Defect because it presents a material, safety risk to consumers. And Whirlpool had a duty to disclose because it made many partial representations about the qualities and reliability of its Ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of its Ranges.

76. Despite this, Whirlpool never disclosed the Defect to consumers in any of its advertising or sales materials, its warranty or anywhere; therefore consumers did not know of the Defect prior to their purchase of the Ranges.

77. Instead, Whirlpool concealed the existence of the Defect despite receiving numerous reports of the Defect from consumers as evidenced above. Whirlpool not only knows about the Defect, and has known about it for some time, but it also continues to profit from its concealment by selling tens of thousands of Ranges with this universal safety Defect.

### E. Injuries and Risk of Imminent Harm to Plaintiff and the Class

78. Plaintiff and the other Class Members purchased their Ranges solely for

their personal, residential purposes and only used the Ranges as intended and in accordance with the operating instructions provided by Whirlpool.

79. In light of the Defect, Plaintiff and other Class Members paid far more than the reasonable value of the Range, and would have paid substantially less, or not have purchased a Range at all, had Whirlpool adequately disclosed the Defect.

80. Whirlpool has profited and continues to profit from the sale of defective Ranges by failing to disclose the above-described Defect and continuing to sell Ranges at prices well above their reasonable value.

81. As a direct and proximate result of Whirlpool's false warranties, omissions, and failure to disclose the Defect in these Ranges, Plaintiff and the Class have purchased the Ranges and have suffered injury as a result.

82. As a direct and proximate result of Whirlpool's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Ranges, and its failure to remove the defective Ranges from consumers' homes or otherwise remedy the Defect, Plaintiff and the Class purchased Whirlpool's defective and unsafe Ranges and, in many cases, use them in their homes to this day. Had Plaintiff and the Class known of this serious safety risk, they would not have purchased the Ranges, would have paid substantially less for their Ranges than they paid, and/or would have removed them from their homes as a result of the risk of unintentional actuation.

## FED. R. CIV. P. 9(b) ALLEGATIONS

83. Although Whirlpool is in the best position to know what omissions it made regarding the Defect when it sold the Ranges to consumers, and what knowledge it had regarding the Defect and why it failed to disclose the Defect to consumers, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

84. ***Who***: Whirlpool, through itself and its subsidiaries and affiliates, made the material omissions described above related to the Defect in the Ranges when it sold the Ranges to consumers throughout the country.

85. ***What***: Whirlpool's conduct here was, and continues to be, fraudulent because it omitted the Defect from the marketing, labeling, and packaging of the Ranges, and otherwise failed to disclose the Defect to consumers even after it knew about the Defect and its universality throughout all Ranges.

86. ***When***: The omissions related to the Defect found in the Ranges were made at every moment throughout the class periods, prior to and after the point of sale, leaving Plaintiff and Class Members unaware of the risks of the Defect prior to purchasing the Ranges.

87. ***Where***: Whirlpool's omissions regarding the Defect were made on its packaging and marketing materials, on its website and other websites where the Ranges were sold, on advertisements, on its social media, in written form, electronic form, and

conventional hardcopy form. The material omissions were made everywhere because Whirlpool never disclosed the Defect to consumers.

88. ***How***: Whirlpool made the omissions regarding the Defect and failed to disclose the Defect to consumers prior to the point of sale of the Ranges, in either written form, on its website, electronic form, or any conventional hardcopy form.

89. ***Why***: Whirlpool made the omissions for the express purpose of inducing Plaintiff and Class Members to purchase the Ranges, the effect of which was that Whirlpool profited by selling the Ranges to tens of thousands of consumers.

90. ***Injury***: Plaintiff and Class Members purchased, or paid more for, the Ranges when they otherwise would not have absent Whirlpool's omissions regarding the Defect. Consumers continue to suffer economic harm by purchasing the Ranges that present material safety risks through the universality of the Defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule

91. The causes of action alleged by Plaintiff and the Class accrued upon discovery of the defective nature of the Ranges. Because the Defect is latent, and Whirlpool concealed it, Plaintiff and members of the Class did not discover and could not have discovered the Defect through reasonable and diligent investigation. Reasonable and diligent investigation did not and could not reveal a factual basis for a cause of action based on Whirlpool's concealment of the Defects.

### B. Fraudulent Concealment

92. Any applicable statutes of limitation have been tolled by Whirlpool's knowing, active, and ongoing concealment and denial of the facts as alleged here.

93. Whirlpool was and is under a continuous duty to disclose to Plaintiff and the Class the true character, quality and nature of the Ranges, particularly with respect to the serious risks to public safety presented by the Ranges.

94. At all relevant times, and continuing to this day, Whirlpool knowingly, affirmatively and actively misrepresented and concealed the true character, quality, and nature of the Ranges and sold the Ranges into the stream of commerce as if they were safe for use.

95. Given Whirlpool's failure to disclose this material non-public information, over which Whirlpool had exclusive control, about the defective nature of the Ranges and attendant safety risks—and because Plaintiff and Class Members could not reasonably have known that the Ranges were thereby defective—Plaintiff and Class Members reasonably relied on Whirlpool's assurances of safety. Had Plaintiff and class members known that the Ranges pose a safety risk to the public, they would not have purchased the Ranges.

96. Plaintiff and the Class have been kept ignorant by Whirlpool of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and the Class could not reasonably have discovered the

true, latently defective nature of the Ranges.

### C. Estoppel

97. Whirlpool was and is under a continuing duty to disclose to Plaintiff and the Class the true character, quality, and nature of the Ranges. Whirlpool knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Ranges, and the concealment is ongoing. Whirlpool knew of the Defects and the serious safety risk they posed to consumers and has actively concealed them. Plaintiff reasonably relied on Whirlpool's assurances of safety. For these reasons, Whirlpool is estopped from relying on any statute of limitations in defense of this action.

98. Additionally, Whirlpool is estopped from raising any defense of laches due to its own conduct as alleged herein.

## CLASS ACTION ALLEGATIONS

99. Plaintiff brings this action on his own behalf and on behalf of the following Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

**Nationwide Class**

> All residents of the United States and its territories who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

**Multi-State Consumer Protection Subclass**

> All residents of Delaware, along with residents of states with substantially similar state consumer protection statutes, who purchased

a new Range or otherwise acquired a Range, primarily for household use and not for resale.

**Delaware Subclass**

All residents of Delaware who purchased a new Range or otherwise acquired a Range, primarily for household use and not for resale.

100. The Class and the Subclass are referred to collectively as the "Class" for convenience. Excluded from the Class and Subclass are Whirlpool, its affiliates, employees, officers, and directors; and the Judge(s) assigned to this case and their staff(s). Plaintiff reserves the right to modify, change, or expand the Class definitions above in response to discovery and/or further investigation.

101. ***Numerosity***. The class is so numerous that joinder of all members is impracticable. As of Q1 2019, Whirlpool accounted for 16.3% of the market share in the North American home appliances market. The Class and Subclass therefore must contain, at the very least, hundreds of members each.

102. ***Commonality***. The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Ranges' common design, whether the design is defective, whether the defective design poses a safety risk, Whirlpool's knowledge of the Defect, and the uniform diminution in value of the Ranges. The common questions of law and fact include, but are not limited to, the following:

a. Whether the Ranges pose unreasonable safety risks to consumers;

b. Whether Whirlpool knew or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c. Whether Whirlpool concealed the safety risks its Ranges pose to consumers;

d. Whether the safety risks the Ranges pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a Range;

e. Whether the Ranges possess material Defects;

f. Whether Whirlpool knew or should have known of the inherent Defects in the Ranges when it placed them into the stream of commerce;

g. Whether Whirlpool concealed the Defects from consumers;

h. Whether the existence of the Defects are material facts reasonable purchasers would have considered in deciding whether to purchase a range;

i. Whether Whirlpool was unjustly enriched by the sale of defective Ranges to the Plaintiff and the Class;

j. whether any material omissions by Whirlpool concerning its defective Ranges caused Class Members' injuries; and

k. whether Whirlpool should be enjoined from further sales of the Ranges.

103. ***Typicality***. Plaintiff has the same interest as all members of the classes he seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiff and all class members own or owned a Range designed or manufactured by Whirlpool with uniform Defects. All the claims of Plaintiff and Class Members arise out of Whirlpool's placement of a product into the marketplace it knew was defective and posed safety risks to consumers, and

from Whirlpool's failure to disclose the known safety risks and Defects. Also typical of Plaintiff and Class members' claims are Whirlpool's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Ranges, Whirlpool's conduct in concealing the Defects in the Ranges, and Plaintiff's and Class members' purchase of the defective Ranges.

104. ***Adequacy***. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

105. ***Predominance and Superiority***. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Whirlpool has acted in a uniform manner with respect to the Plaintiff and Class Members.

106. Whirlpool is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Whirlpool's wrongful

conduct as alleged herein.

107. The concealed safety risks described above support swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

108. Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Whirlpool's unlawful and wrongful conduct. Without a class action, Class Members will continue to suffer the undisclosed risks attendant to the Ranges and incur monetary damages, and Whirlpool's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

109. There will be no undue difficulty in the management of this litigation as a class action.

110. Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all class members and materially advance the litigation.

111. ***Injunctive and Declaratory Relief***. Whirlpool has acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Whirlpool made uniform representations and warranties to the Class as a whole, Whirlpool concealed facts from and made

material omissions to the Class as a whole, and Whirlpool has destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS FOR RELIEF

### COUNT I
***Violations of the Michigan Consumer Protection Act (MCPA)***
**Mich. Comp. Laws Ann. § 445.901, et seq.**
**(On behalf of the Nationwide Class)**

112. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth here.

113. Plaintiff brings this claim under the laws of Michigan, individually and on behalf of the Nationwide Class.

114. The Michigan Consumer Protection Act was created to protect Michigan consumers from deceptive and unfair business practices.

115. Whirlpool's conduct described herein constitutes the act, use or employment of deception, false promise, misrepresentation, unfair practice and the concealment, suppression and omission of material facts in connection with the sale and advertisement of merchandise, the Ranges, in trade or commerce in Michigan, to Plaintiff and members of the Nationwide Class, making it unlawful under Mich. Comp. Law Ann. §445.901, et seq.

116. Plaintiff and the Class members relied upon the material representations made by Whirlpool and purchased the Ranges for personal purposes and suffered

ascertainable losses of money or property as the result of the use or employment of a method, act or practice declared unlawful by Mich. Comp. Law Ann. §445.901, et seq.

117. Plaintiff and the Class Members acted as reasonable consumers would have acted under the circumstances, and Whirlpool's unlawful conduct would cause reasonable persons to enter into the transactions (purchasing the Ranges) that resulted in the damages. Accordingly, pursuant to Mich. Comp. Law Ann. §445.901, et seq., Plaintiff and the Class Members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are: (a) the difference between the values of the Ranges as represented (their prices) paid and their actual values at the time of purchase ($0.00), or (b) the cost to repair or replace the Ranges, and (c) other miscellaneous incidental and consequential damages.

118. In addition, given the nature of Whirlpool's conduct, Plaintiff and the Class Members are entitled to all available statutory, exemplary, treble, and/or punitive damages and attorneys' fees based on the amount of time reasonably expended and equitable relief necessary or proper to protect them from Whirlpool's unlawful conduct.

**Count II**
***Violation of State Consumer Protection Statutes***
**(On behalf of the Multi-State Consumer Protection Subclass)**

119. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

120. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Class.

121. Plaintiff and Multi-State Consumer Protection Subclass Members have been injured as a result of Whirlpool's violations of the state consumer protection statutes listed above, which also provide a basis for redress to Plaintiff and Multi-State Consumer Protection Subclass Members based on Whirlpool's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct. Each of the statutes listed above is materially similar.

122. Whirlpool's conduct as alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Subclass.

123. Whirlpool's marketing of the Ranges violates these prohibitions by deceiving consumers into believing that the Ranges do not possess the Defect and attendant safety risks when, in fact, this is not true.

124. Whirlpool has engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of applicable law.

125. Whirlpool engaged in misleading and deceptive advertising by materially omitting and failing to warn consumers of the Defect. Whirlpool chose to package and

market the Ranges in this way to impact consumer choices, extract price premiums, and gain market dominance, as it is aware that all consumers who purchased the Ranges would be impacted by the Defect and would reasonably believe Whirlpool's false and misleading material omissions regarding the Defect.

126. Whirlpool intended that Plaintiff and other Multi-State Consumer Protection Subclass Members would rely upon the material omissions regarding the Defect.

127. Whirlpool's concealment, omissions, and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other Multi-State Consumer Protection Subclass Members to be deceived about the true nature of the Ranges.

128. As a direct and proximate result of Whirlpool's violations of consumer protection laws, Whirlpool caused Plaintiff and other Multi-State Consumer Protection Subclass Members to have suffered ascertainable loss of money caused by Whirlpool's material omissions.

129. Had they been aware of the true nature of the Ranges, Plaintiff and other Multi-State Consumer Protection Subclass Members would have paid less or nothing at all for the Ranges.

130. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and the Multi-State Consumer Protection Class Members are entitled to

recover compensatory damages, restitution, punitive and special damages, including, but not limited to, treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

**COUNT III**
***Violations of the Delaware Consumer Fraud Act***
**Del. Code Ann. tit. 6, § 2511, *et seq.***
**(On behalf of the Delaware Subclass)**

131. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

132. Plaintiff Davies brings this claim individually and on behalf of the Delaware Subclass.

133. The Delaware Consumer Fraud Act ("DCFA") protects consumers from unfair or deceptive merchandising practices in the conduct of any trade or commerce.

134. The DCFA prohibits sellers of merchandise from "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby…" Del. Code Ann. tit. 6, § 2513(a).

135. Whirlpool made material omissions concerning a presently existing or past fact in violation of substantially identical common law. Whirlpool did not fully and truthfully disclose to its customers the true nature of the Defect. A reasonable

consumer would not have expected the Defect in a new Range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

136. Whirlpool omitted to disclose the Defect with the intent that Plaintiff and Delaware Subclass Members rely upon the omission.

137. The facts concealed, suppressed, and not disclosed by Whirlpool to Plaintiff and Delaware Subclass Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges, or to pay a lesser price.

138. As a direct and proximate result of Whirlpool's violations of the DCFA, Plaintiff and the Delaware Subclass have suffered injury-in-fact and/or actual damage.

## COUNT IV
### *Fraud by Omission*
### (On behalf of the Nationwide Class or, in the Alternative, the Delaware Subclass)

139. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

140. Plaintiff Davies brings this claim individually and on behalf of the Nationwide Class or, alternatively, the Delaware Subclass.

141. Whirlpool made material omissions concerning a presently existing or past fact in violation of substantially identical common law. Whirlpool did not fully and truthfully disclose to its customers the true nature of the Defect. A reasonable

consumer would not have expected the Defect in a new Range and especially not a Defect that rendered the range unsafe and unusable for ordinary purposes.

142. Whirlpool omitted to disclose the Defect with the intent that Plaintiff and Class Members rely upon the omission.

143. The facts concealed, suppressed, and not disclosed by Whirlpool to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Ranges, or to pay a lesser price.

144. Whirlpool had a duty to disclose the true quality, and safety risks of the Ranges because the knowledge of the Defect and its details were known and/or accessible only to Whirlpool, Whirlpool had superior knowledge and access to the relevant facts, and Whirlpool knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. Whirlpool also had a duty to disclose because it made many partial representations about the qualities and reliability of its ranges, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual unsafe design of their Ranges.

145. Had Plaintiff and the Class known about the defective nature of the Ranges, they would not have purchased the Ranges or would have paid less.

146. Plaintiff and Class Members reasonably relied to their detriment upon Whirlpool's material omissions and suffered damages as a result.

147. Whirlpool's conduct was willful, wanton, oppressive, reprehensible, and malicious. Consequently, based upon all the facts as alleged herein, Plaintiff and Class Members are entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the above defined Classes, by and through counsel, prays the Court grant the following relief:

A. An Order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B. An Order appointing Plaintiff as representative for the Classes he seeks to represent, and appointing his counsel as lead counsel for the Classes;

C. An Order awarding Plaintiff and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Whirlpool;

D. A Declaration that the Ranges are defective and pose a serious safety risk to consumers and the public;

E. An Order enjoining Whirlpool, its agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective Ranges; requiring Whirlpool to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Ranges; and requiring Whirlpool to preserve all evidence relevant to this lawsuit and notify Range owners with whom it comes in contact of the pendency of this and related litigation;

F. Nominal damages as authorized by law;

G. Restitution as authorized by law;

H. Punitive damages as authorized by law;

I. Payment to the Class of all damages associated with the replacement of

the defective products and parts, in an amount to be proven at trial;

J. An Order awarding attorney's fees pursuant to applicable Federal and State law;

K. Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

L. Any and all other and further relief as this Court deems just, equitable, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Dated: October 28, 2026

Respectfully submitted,

*<u>/s/ Zachary Arbitman</u>*
Zachary Arbitman
FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
zarbitman@feldmanshepherd.com

Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

Michael F. Ram
MORGAN & MORGAN
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
mram@forthepeople.com

*Attorneys for Plaintiff and the Class*